**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **SUE E. MOSKOVITS,** an individual<br><br>Plaintiff, | | Case No. 8:17-cv-452 |
| v. | | |
| **HEWLETT PACKARD ENTERPRISE COMPANY,** a Delaware corporation licensed to do business in Nebraska,<br><br>Defendant. | | **COMPLAINT**<br><br>**JURY DEMAND**<br>**Place of Trial: OMAHA, NEBRASKA** |

## FACTS

1.      On April 26, 2016, after 19 years of dedicated service, 57-year old Sue Moskovits ("Ms. Moskovits") was fired by Hewlett Packard Enterprise Company ("HPE"). Ms. Moskovits held the position of Support Sales Manager for HPE's Communications & Media Solutions ("CMS") unit.

2.      Ms. Moskovits' job responsibilities included negotiating annual support contracts and annuity service contracts for HPE's hardware and software customers in North America. These customers included, *e.g.,* AT&T, Verizon, and Sprint, and the contracts Ms. Moskovits negotiated with them ranged from totals of $60 million and $80 million annually.

3.      In 2013, Ms. Moskovits' territory was expanded to include "the Americas," making her responsible for negotiating support contracts from Canada through Argentina. Ms. Moskovits was the only female who reported directly to HPE's Director of Americas CMS Kapil Raval. Her comparators were male and were designated as "director," not "manager."

4.      Historically, Ms. Moskovits' annual performance ratings were at or above average, and she achieved all her Key Performance Indicators ("KPI"). She had an established history of receiving bonuses and raises after her performance reviews.

1

5. Only two (2) weeks before Christmas 2014, and three (3) weeks before the end of the calendar year, a financial reporter who did not work directly for Sue left the company. Due to the lack of any transition and training from the departed employee and subsequent illness, the employee who replaced him struggled to properly report the financial aspects of the position, thus affecting the financial performance of Ms. Moskovits' team. Ms. Moskovits did not receive a December 2015 bonus, as a result. Ironically, those issues were ironed out and no longer existed as of mid-January 2016.

6. On January 21, 2016, however, Ms. Moskovits' supervisor, Larry Marson, surprised her by issuing her a performance warning. Marson put Ms. Moskovits on a performance improvement plan ("PIP") for purportedly not producing enough reports. Ms. Moskovits voiced her disagreement with the PIP and Marson responded, telling her it was only a formality, certainly "not a big deal." Despite Marson's attempt to downplay the fact of the PIP, two significant facts belie his statement:

   a. Three others who reported to Marson did not meet their goals; but Marson put only Ms. Moskovits on a PIP.

   b. The Operations Manager for Ms. Moskovits' group re-ran the financial data for Ms. Moskovits and advised her that, in fact, she met her financial goals.

7. By January 28, 2016, Ms. Moskovits had conferred with Marson and devised a plan to address the issues in the PIP. She exchanged emails with Marson reflecting the process and the result.

8. Despite Ms. Moskovits' efforts and her complaint to Human Resources, Marson maintained the "fraternity" atmosphere created under his supervision. Other female employees complained – Marian Whipple, Monica Dupree – putting HPE on notice of the offensive behavior. Nonetheless, HPE did nothing to correct or even address the male team members' antics. For example, male team members failed to invite all female team members to team meetings: only

the young, fresh, new female employees were invited. When an older female did attend, such as Ms. Moskovits, she was expected to sit and listen to the male managers. If she challenged any of the male attendees or questioned their statements, her premise was rejected out of hand. A male team member would interject, warning her that "you women need to learn to talk to us," we are "not going to learn to talk to you." Another practice about which female employees complained related to a male executive who kept an ongoing dating log, reflecting the names and status of female team members.

9. In addition to this demeaning atmosphere, and unbeknownst to Ms. Moskovits, HPE failed to compensate her at the same level it compensated the male Sales Managers or Directors who were in positions comparable to hers. Ms. Moskovits' historical receipt of bonuses and raises did not justify her lower salary. During her employment, HPE provided Ms. Moskovits with bonuses and annual increases that moved her compensation in lock-step fashion with that of her male comparators at HPE. As a specific example, in 2011 Ms. Moskovits' North America group was on track to achieve 120% of goal, pushing the CMS group over its goal. HP promoted another male manager for this success, but it failed to promote Ms. Moskovits, giving her a bonus rather than a raise.

10. Finally, HPE utilized a stacked ranking methodology for assessing its managers' and directors' performance. By using the stacked ranking system, HPE allowed Ms. Moskovits' manager, Marson, to enforce his inherent bias against females and, more particularly, females over 40. In fact, HPE's use of the forced ranking device allowed Marson to rank Ms. Moskovits lower than her less experienced and less productive co-workers.

11. On April 26, 2016, Marson terminated Ms. Moskovits. His stated reason was "unsatisfactory performance" in that Ms. Moskovits failed to meet the PIP requirements because she was not communicating by issuing reports. Ms. Moskovits disputed that claim. She provided Marson with all of the reports identified when she addressed the terms of the PIP with him.

3

12. Marson did not hold the male members the North Americas team to the same standard he held as Ms. Moskovits.

   a. Rick Manthey, a male co-worker in his 50s, suffered performance problems. Marson reassigned Manthey to a different, interim position and then allowed him another year to find a different position within HPE.

   b. Andre Pinho, a male co-worker in his 40s, was assigned to replace Ms. Moskovits. Pinho, however, had not met his financial metrics and goals for one full year. Nonetheless, Marson rated him as having "achieved" his goals under the HPE evaluation system.

   c. Angus Linehan, a male co-worker in his 40s, also had not met his goals for one entire year. Again, Marson rated him as having "achieved" his goals.

13. Ms. Moskovits was a long term employee who performed well for years and was not treated the same as male employees, even when those employees did not perform as well as she performed.

14. Ms. Moskovits dual filed charges of discrimination with the Nebraska Equal Opportunity Commission (2-16/17-7-47755-RT) and the federal Equal Employment Opportunity Commission (32E-2016-00692). The EEOC issued its Notice of Right to Sue on October 18, 2017. (A copy of the EEOC Notice of Right to Sue is attached as Exhibit A and incorporated by this reference as if fully set forth).

## **VENUE & JURISDICTION**

15. This matter arises under federal and state law. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 based on Ms. Moskovits' federal claims in this Complaint. This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this district pursuant to 28 U.S.C § 1391(b)(2), because the acts forming the basis for this Complaint were orchestrated from, planned in, and conducted in this District.

## **PARTIES**

17. Ms. Moskovits is a citizen and resident of Omaha, Nebraska. She is female and 58 years old. She was employed by HPE for 19 years.

18. HPE is a Delaware corporation that is doing business in Nebraska.

## **CLAIM I**

**UP DISCRIMINATED AGAINST
MS. MOSKOVITS BASED ON HER SEX /GENDER
Title VII of the Civil Rights Act**
42 U.S.C. § 2000e-2
**Nebraska Fair Employment Practices Act,**
Neb. Rev. Stat. § 48-1104
**Equal Pay Act**
29 U.S.C. § 206(d)

19. Ms. Moskovits incorporates by reference paragraphs 1-18, inclusive, as if fully set forth.

20. According to Title VII of the Civil Rights Act of 1964,

> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex;
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex.

42 U.S.C. § 2000e-2.

21. The federal Equal Pay Act, 29 U.S.C. § 206(d)(1), also prohibits discrimination in the payment of wages:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions. . ..

22. Similarly, Nebraska's Fair Employment Practices Act ("NFEPA") provides, in relevant part, as follows:

> It shall be an unlawful employment practice for an employer:
>
> (1) To fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's … sex.

Neb. Rev. Stat. § 48-1104.

23. HPE failed to pay Ms. Moskovits at the same level as it paid its male employees who performed equal work requiring equal skill, effort and responsibility. HPE's management subjected Ms. Moskovits to discriminatory treatment by keeping her salary at a lower level than her comparators, including a level that was lower than the male employees who reported to her. Ms. Moskovits received raises and bonuses based on her evaluations, but HPE provided its male employees with concomitant raises and bonuses that kept their compensation moving in parallel although vastly different, ranges. HPE failed to pay her any amounts that would have decreased the difference between what Ms. Moskovits was paid and her male counterparts, who were younger and far less experienced.

24. HPE failed to provide Ms. Moskovits with the same time and consideration as it allowed male employees to move to different positions or to hold positions for which they failed to perform at an "achieved" level.

WHEREFORE, Ms. Moskovits requests judgment ordering an award of damages pursuant to 42 U.S.C. §§ 206(d) and 2000e-2, and Neb. Rev. Stat. § 48-1119(4) based on HPE's discriminatory terms and conditions of employment and payment of wages.

### CLAIM II

**HPE DISCRIMINATED AGAINST MS. MOSKOVITS
ON THE BASIS OF HER AGE
42 U.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1001 et seq.
29 U.S.C. § 621 et seq.**

**Neb Rev. Stat. §§ 48-1104 et seq.**.

25. Ms. Moskovits incorprates here paragrphs 1-24, as if fully set forth.

26. According to the Age Discrimination in Employment Act ("ADEA"), it shall be unlawful for an employer-

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.
>
> (b) It shall be unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

29 U.S.C. § 623(a).[1]

---

[1] The Nebraska Fair Employment Practices Act, 48-1101 et eq., is patterned after the federal ADEA. *Neitzke v. Husqvarna Prof. Outdoor Prods., Inc.*, 529 F.Supp.2d 1022, 1025 (D. Neb. 2008) (Riley, sitting by designation). Nebraska courts look to federal

27. Under the ADEA, the plaintiff states a prima facie case by showing that: (1) she is a member of a protected age group; (2) she was qualified for the position sought; (3) she was not hired; and (4) the employer hired a younger worker. *E.g., Christensen v. Titan Distribution, Inc.,* 481 F.3d 1085, 1096 (8th Cir. 2007). A defendant can rebut the prima facie case by offering a legitimate nondiscriminatory explanation. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 142 (2000). The plaintiff then has the opportunity to demonstrate the employer's stated reason is a pretext and that age-based animus was the real reason for the employer's action.

28. Ms. Moskovits easily meets the requirements for a prima facie case. She is a 58-year-old woman who worked for HPE for 19 years, receiving satisfactory evaluations and concomitant raises and bonuses. Despite meeting her KPI indicators, including financial goals, she was terminated and replaced by a younger male. Her replacement had performance issues known to Ms. Moskovits, but he was promoted to her position nonetheless.

29. HPE failed to offer a legitimate reason for Ms. Moskovits termination. Her review demonstrates that all of her "Key Performance Indicators" were met. The purported basis for her termination was "communication," *e.g.*, not providing reports to Marson. In fact, Ms. Moskovits *did* provide all reports required pursuant to her PIP. Nonetheless, Marson terminated her, effective the same day as she was provided notice.

WHEREFORE, Ms. Moskovits requests judgment ordering an award of damages pursuant to 42 U.S.C. §§ 206(d) and 2000e-2, and Neb. Rev. Stat. § 48-1119(4) based on HPE's discriminatory practices, terms and conditions of employment, and payment of wages.

---

decisions for guidance when analyzing and applying the age components of NFEPA. *Id.*

## **REQUEST FOR RELIEF**

WHEREFORE, Ms. Moskovits requests for judgment ordering:

1. An award of damages relating to Ms. Moskovits' lost wages due to her discriminatory wages rates and lack of early retirement benefits;

2. An award of damages relating to Ms. Moskovits' fringe benefits;

3. An award of damages relating to Ms. Moskovits' emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

4. An award of damages relating to Ms. Moskovits' out-of-pocket expenses for any mental health treatment;

5. An award of damages for such other general, special or liquidated damages as proven at trial;

6. An award of costs and attorney fees to Ms. Moskovits against UP; as allowed by law, and

7. Any further legal or equitable relief as the Court may deem appropriate.

**PLAINTIFF MAKES DEMAND FOR TRIAL BY JURY.**

PLACE OF TRIAL: OMAHA NE

Date: November 22, 2017

SUE E. MOSKOVITS, Plaintiff,

By: /s/ *Terry A. White*
Terry A. White #18282
**CARLSON & BURNETT LLP**
17525 Arbor Street
Omaha, NE 68130
Main: (402) 934-5500
Direct: (402) 682-8006
terry@carlsonburnett.com

*Attorneys for Plaintiff*

EEOC Form 161-B (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Sue E. Moskovits<br>17528 Polk St<br>Omaha, NE 68135 | From: | St. Louis District Office<br>1222 Spruce Street<br>Room 8.100<br>Saint Louis, MO 63103 |
|---|---|---|---|

**Exhibit A**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32E-2016-00692 | Joseph J. Wilson,<br>State & Local Program Manager | (314) 539-7816 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*James R. Neely, Jr.,*
Director

October 18, 2017
*(Date Mailed)*

Enclosures(s)

cc:
HEWLETT PACKARD ENTERPRISE COMPANY
c/o Jessica L. Marrero
THE KULLMAN FIRM
PO Box 60118
New Orleans, LA 70160

Alexis Mullaney
CARLSON & BURNETT
17525 Arbor St
Omaha, NE 68130